Watkins Patents, Inc. v. Commissioner.
Watkins Patents, Inc. v. Commissioner
Docket No. 24559.
United States Tax Court
1950 Tax Ct. Memo LEXIS 25; 9 T.C.M. (CCH) 1106; T.C.M. (RIA) 50297; November 30, 1950
*25 Since its organization in 1940, petitioner relied upon a well experienced and reputable accountant to prepare its tax returns and to advise it regarding tax matters generally. This accountant participated in the organization of petitioner and in that of petitioner's majority corporate stockholder. He had more than 20 years' extensive tax experience. At all times he had pertinent information from which could be determined the personal holding company status of the petitioner. On each of its income tax returns for the years involved, the petitioner, relying upon the advice of the accountant, answered "No" to the question as to whether it was a personal holding company, and did not file a personal holding company return. The petitioner's income during the taxable years consisted for the most part of royalties from patents which it held. Held: Although petitioner is liable in each of the taxable years for a personal holding company surtax, a liability which it concedes, it is not liable for penalties for failure to file personal holding company returns. Its failure to do so was due to reasonable cause and not due to willful neglect. I. Herman Sher, Esq., 70 Pine St., New York 5, N. Y., for the petitioner. George E. Gibson, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion This proceeding involves (1) the personal holding company surtax liability of Watkins Patents, Inc., an Illinois corporation, for each of the taxable years ended March 31, 1941 to *27 1946, inclusive, for the purpose of establishing by the decision of this Court as required by section 506 (a) of the Internal Revenue Code, the deficiency in personal holding company surtax for each of the taxable years; and (2) on the merits, its liability for a penalty for failure to file a personal holding company return for each of the taxable years. The respondent has determined that the petitioner is liable for deficiencies in personal holding company surtax and penalty for failure to file a personal holding company return for each of the taxable years ended March 31, 1941 to 1946, inclusive, as follows: Year ended
Personal holding
March 31
company surtax
Penalty
1941
$ 551.69
$ 137.92
1942
4,265.23
1,066.31
1943
1,389.91
347.48
1944
3,249.82
812.46
1945
4,112.45
1,028.11
1946
8,515.41
2,128.85
Findings of Fact The petitioner is an Illinois corporation with principal office in Memphis, Tennessee. It was incorporated on April 27, 1940, and its business has since then consisted of the licensing of manufacturers of shipping containers under patents which it holds. The issued and outstanding capital stock of the *28 petitioner from the date of its organization until after March 31, 1946, was held and owned by the following: Number of
shares held
Shareholder
and owned
Dillman Industries, Inc.
830
J. R. Watkins
215
Kennett W. Dillman
10
A. W. D. Weis
10
Henry B. Weis
10
Total shares issued and
outstanding
1,075
The issued and outstanding capital stock of Dillman Industries, Inc., during the period involved was held and owned by the following: Shares held and
owned
Shareholder
Number
Per cent
Kennett W. Dillman and his
family
3,900
50.0000
A. W. D. Weis and his family
2,775
35.5769
Henry B. Weis and his family
1,125
14.4231 The term "family" as used in each of the above instances has the same meaning which that term has as used in section 503(a)(2) of the Internal Revenue Code for the purpose of section 501(a)(2) of the Internal Revenue Code. The entire gross income of the petitioner for the taxable years ended March 31, 1941, 1943, 1944, 1945 and 1946, and at least $17,133 of its entire gross income of $17,433 for its taxable year ended March 31, 1942, consisted of royalties *29 for its licensing of manufacturers of shipping containers under patents which it held. During each of these years the petitioner was a personal holding company within the meaning of section 501 of the Internal Revenue Code. The petitioner filed a Federal income tax return on Form 1120 for each of the taxable years involved wherein it reported gross income as follows: Year ended
Gross income
March 31
Royalties
Other
Total
1941
$ 1,952.89
None
$ 1,952.89
1942
17,133.00 $300+
17,433.00
1943
13,065.75
None
13,065.75
1944
21,273.97
None
21,273.97
1945
23,562.02
None
23,562.02
1946
34,085.26
None
34,085.26 A schedule attached to each of the taxpayer's income tax returns for the years ended March 31, 1941, 1942 and 1945, showed that approximately 76 per cent of the voting stock of the petitioner has been owned by Dillman Industries, Inc., since April 27, 1940. In answer to the question on page 3 of each of the taxpayer's income tax returns for the years involved, "Is the corporation [that is, the petitioner] a personal holding company within the meaning of section 501 of the Internal Revenue Code *30 ?", the petitioner answered "No". For the purpose of determining the necessity for filing an excess profits tax return, the petitioner reported in its returns for the taxable years ended March 31, 1941, 1943 and 1945, the following excess profits net income: Year ended
Excess Profits
March 31
Net Income
1941
$ 771.60
1943
2,470.94
1945
6,812.97 The petitioner filed a Federal excess profits tax return for each of its taxable years ended March 31, 1942, 1944 and 1946, wherein it reported excess profits tax liability as follows: Year ended
Excess Profits
March 31
Tax
1942
$ 360.51
1944
None
1946
1,163.85 All of the above-stated returns, except the income tax return for the year ended March 31, 1945, were prepared for the petitioner, at its request, by John W. Schoelch, a tax accountant and consultant. The income tax return for that year was prepared in the first instance by a firm of certified public accountants in Dayton, Ohio. At petitioner's request it was reviewed and approved by Schoelch. Prior to the year 1919, John W. Schoelch had been employed by the Treasury Department. From that year until his death on March 25, 1947, he practiced *31 in St. Louis, Missouri and the middle west as a tax accountant and consultant. He had attended night school for 17 years in lieu of daytime study in high school or college. For this reason he was not permitted to sit for a certified public accountant's examination in Missouri until 1946. He then took such an examination, which he passed, and in December, 1946, became a certified public accountant. In 1943 the accountants of Missouri formed a public accountant's association, and Schoelch was then admitted to the association. Since May of 1943 he was registered with the Missouri State Board of Accountants as a public accountant. From the time he left the employ of the Treasury Department until his death he held a permit to practice before that Department. Schoelch, as a practicing accountant, specialized in the preparation of Federal and State tax returns. He handled income tax matters for various clients, both corporations and individuals. Clients for whom he prepared Federal tax returns during the years here involved numbered approximately 40 corporations and 200 individuals, partnerships and trusts. His clients included many corporations, including Dillman Industries, Inc., and *32 the petitioner from the time each was organized. For about 25 years he prepared individual income tax returns for the members of the Dillman and Weis families. So far as the record shows, no controversy has arisen involving his failure to file any required Federal tax return for any client other than the present instance. He had frequent meetings with revenue agents and other representatives of the Bureau of Internal Revenue during the past 25 years in connection with tax matters. Revenue agents came to his office on the average of several times a week. He was well known to the Bureau of Internal Revenue and knew most of the revenue agents in that office. Schoelch had a very high reputation as a good and reliable tax accountant throughout the middle west where he practiced. At least 90 per cent of the clients which he had in 1923 remained with him thereafter until he died in 1947. Dillman Industries, Inc. was organized in 1931 and was, until 1947, engaged in the manufacture of shipping containers. The Dillman and Weis families owned and operated the business. Before 1931 this business was operated by several predecessor companies. Schoelch was the tax accountant for the predecessor *33 companies. He was consulted and participated in the organization of Dillman Industries, Inc. and thereafter, in addition to preparing its Federal and State income tax returns and annual reports, attended to the matter of stamp taxes in connection with the issuance and transfer of capital stock. He was at all times kept informed as to the ownership of its issued and outstanding capital stock. Schoelch was also consulted and participated in the organization of the petitioner. At all times thereafter he was kept informed as to the ownership of its issued and outstanding capital stock and the source of its gross income. He was not at any time an officer or stockholder of petitioner, but was engaged by it as an outside tax accountant and consultant. The possibility of the petitioner having the status of a personal holding company was never discussed. No one on behalf of the petitioner ever consulted Schoelch on this matter nor did Schoelch ever question any of the petitioner's officers about it. Kennett W. Dillman participated in the organization of both Dillman Industries, Inc. and the petitioner. He has been an officer of Dillman Industries, Inc. since its organization in 1931, and *34 is now its president. He has also been secretary and treasurer of the petitioner since its organization on April 27, 1940. He knew John W. Schoelch since about 1925 when he met him in connection with tax matters. Dillman and other officers of Dillman Industries, Inc., and the petitioner, relied entirely and absolutely on Schoelch for tax advice in connection with all tax returns filed and to be filed by those corporations. They requested and expected him to prepare all tax returns which these corporations were required to file. The books of the above corporations were audited annually by accountants other than Schoelch. He had access to all their books and records and was furnished a copy of the report of the auditors for each year. The stock certificate books of Dillman Industries, Inc. and the petitioner, as well as the account books of the petitioner, were left with Schoelch in his office from time to time for his examination and information. In order to keep him fully informed regarding the company, for tax purposes of that company, the petitioner and the members of the Dillman and Weis families, Dillman furnished Schoelch with detailed lists of the stockholders of Dillman Industries, *35 Inc., as changes occurred. Dillman conferred with Schoelch from 1941 to 1947 at all times and when any tax question was involved. The above stated income tax and excess profits tax returns filed by the petitioner were signed and filed by Kennett W. Dillman on its behalf. Prior to February, 1947, when a revenue agent first examined the books of the petitioner, Dillman had not been advised by any one that the petitioner was at any time a personal holding company or that it should file a personal holding company return. When he signed each of the above stated Federal income tax returns filed by the petitioner, Dillman saw the question on page 3 of the return as to whether it was "a personal holding company within the meaning of section 501 of the Internal Revenue Code" and that it was answered "No". He had no personal knowledge regarding the tax law or the regulations of the Commissioner of Internal Revenue with respect to personal holding company returns but relied absolutely on the answer "No" in the return as prepared by Schoelch. The petitioner's failure to file personal holding company returns for the taxable years ended March 31, 1941 to 1946, inclusive, *36 was due to reasonable cause and was not due to willful neglect. Opinion VAN FOSSAN, Judge: The respondent determined deficiencies in personal holding company surtax for each of the taxable years ended March 31, 1941, to March 31, 1946, inclusive. For failure to file personal holding company returns for those years the respondent has added a 25 per cent penalty pursuant to section 291 of the Internal Revenue Code. [1]
The petitioner concedes that it is a personal holding company and that the deficiencies were properly determined by respondent. The sole question remaining is whether the petitioner's failure to file appropriate returns for the taxable years involved was "due to reasonable cause and not due to willful neglect." The uncontradicted evidence herein establishes *37 clearly that petitioner's tax accountant was a highly reputable, experienced and competent tax accountant, - one upon whom petitioner was entitled to rely for advice concerning tax matters. The record also shows that the accountant was fully advised of all facts and records within the knowledge of petitioner and that the petitioner relied absolutely on the advice of the accountant. Our study of the facts in this case has led us to make the above concluding finding of fact, i.e., that petitioner's failure to file personal holding company returns was due to reasonable cause and not due to willful neglect. See Reliance Factoring Corporation, 15 T.C. - (November 10, 1950). We hold accordingly that the respondent correctly determined the deficiencies in personal holding company surtax for each of the taxable years but that he erred in his determination of the penalties. Decision will be entered under Rule 50. Footnotes
1. SEC. 291. FAILURE TO FILE RETURN. (a) In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: * * * not exceeding 25 per centum in the aggregate. * * *↩